UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADITYA MOKKAPATI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO MAYORKAS, <br> *in his official capacity as Secretary of the Department of Homeland Security*, *et al.*, <br><br> Defendants. | Civil Action No. 21-cv-1195 (BAH) <br><br> Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiffs Aditya Mokkapati and Chaitanya Prasad Gullapalli, both citizens of India living in the United States on H-1B and F-1 visas, respectively, seek to compel defendants—senior officials at the U.S. Department of Homeland Security and the U.S. Citizenship and Immigration Services ("USCIS")—to adjudicate their Form I-526 petitions that have been pending without decision for over two years. Compl. ¶¶ 23-24, 55, ECF No. 1. Plaintiffs assert that the "continued delay in the adjudication" of their petitions, which if granted may allow them to become lawful permanent residents of the United States, "has caused inordinate and unfair amounts of stress, expense, and hassle" and thus entitles them to relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1) *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. Compl. ¶¶ 7, 35-36. During the pendency of plaintiffs' petitions, statutory authorization for the EB-5 visa program through which plaintiffs seek permanent residence in this country lapsed in June 2021 and was recently renewed by Congress in March 2022. *See id.* ¶ 52; Defs.'

1

Notice of Withdrawal of Mot. Dismiss in Part ("Defs.' Notice") at 1, ECF No. 18.[1]  Defendants now move to dismiss the complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a plausible claim that any alleged delay is "unreasonable as a matter of law."  Defs.' Mot. Dismiss and Mem. Supp. ("Defs.' Mem.") at 13, ECF No. 13.  As further explained below, defendants' motion to dismiss is granted.

## I. BACKGROUND

Summarized below are brief reviews of the statutory, regulatory, and factual background underlying the claims followed by the procedural history of this case.

### A. Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of visas to different categories of immigrants, including a fifth preference category ("EB-5") visa issued to immigrants who contribute to "employment creation" by investing in new commercial enterprises that create full-time jobs for American workers.  Immigration Act of 1990, Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4989 (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)); *see* 8 C.F.R. § 204.6 (2020) (defining the requirements and process for EB-5 "alien entrepreneur" classification).  An I-526 petition is "the mechanism by which individuals who are eligible to immigrate to the United States through the [EB-5 category] obtain recognition from the government that they have satisfied the investment and job-creation requirements of that visa-preference category."  *Bromfman v. U.S. Citizenship and Immigr. Servs.*, No. 20-cv-571 (BAH), WL 5014436, at *1 (D.D.C. Oct. 28, 2021).

To qualify for a visa under the EB-5 category, an immigrant must first file an I-526 petition with USCIS and "create full-time employment for not fewer than 10 United States

---

[1] All references to the parties' briefs and associated exhibits reflect the enumeration generated automatically by the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

citizens or aliens lawfully admitted for permanent residency or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters)." 8 U.S.C. § 1153(b)(5)(A)(ii).  In furtherance of that jobs-creation objective, the immigrant must have made or be in the process of making an investment of at least $1,000,000 generally or at least $500,000 into a "targeted employment area." *Id.* § 1153(b)(5)(C)(ii).  USCIS permits certain so-called "economic units" to apply for categorization as a "targeted employment area" and designation as a "regional center" through the Immigrant Investor Pilot Program, also called the Regional Center Program.  *See* Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1993 ("Appropriations Act"), Pub. L. No. 102-395, § 610(a), 106 Stat. 1828, 1874 (Oct. 6, 1992); 8 C.F.R. § 204.6(m).

      Successful adjudication and approval of an I-526 petition confers eligibility for, but does not automatically provide, a visa to a petitioner.  "Once the [I-526] petition is processed and [if] a visa becomes available—which may take years—the immigrant advances to 'conditional' lawful permanent resident status." *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020) (citing 8 C.F.R. § 216.6(a)(4)(iii)-(iv)).  This approved eligibility status permits foreign investors (and their dependent family members) to apply for two-year conditional permanent resident status either from within the United States or overseas from the State Department at the United States consular post in the petitioner's home country.  *See* 8 U.S.C. §§ 1186b(a)(1), 1201(a), 1255(i); 8 C.F.R. § 245.2; 22 C.F.R. §§ 42.32(e), 42.41, 42.42.

      Although Congress had consistently reauthorized the Regional Center Program since its establishment in 1992, *Bromfman*, WL 5014436, at *2, this authorization expired on June 30, 2021, *see* Appropriations Act, as amended by, Consolidated Appropriations Act of 2021, Pub. L.

No. 116-260, Div. O, § 104, 134 Stat 1182, 2148 (2020).  Upon the program's statutory sunset, USCIS announced that it would "not act on any pending I-526 petition 'that is dependent on the lapsed statutory authority and was filed before the end of the statutory authorization.'" *Bromfman*, WL 5014436, at *4 n.4 (citations omitted); *id.* at 4 (noting that, throughout lapse of program's authorization, any actions taken by USCIS "to process plaintiff's application would not advance plaintiff's efforts to obtain a Regional Center visa—since Congress has not authorized any" (cleaned up)).

Almost nine months later, on March 15, 2022, President Biden signed the Consolidated Appropriations Act of 2022 into law, which included the EB-5 Reform and Integrity Act of 2022 reauthorizing the Regional Center Program.  *See* Pub. L. No. 117-103, Div. BB, § 101, 136 Stat. 1070 (2022); Defs.' Notice at 1.  The relevant agencies, including USCIS, have over the last few months reimplemented the program and resumed the intake and processing of I-526 petitions. *See* EB-5 Reform and Integrity Act § 101; Defs.' Notice at 1.  During the period of lapsed authorization, USCIS held in abeyance petitions filed before July 1, 2021, including plaintiffs,' Pls.' Opp'n to Defs.' Mot. Dismiss ("Pls.' Opp'n") at 11, ECF No. 14, and rejected any petitions filed after that date, *see Bromfman,* WL 5014436, at *4 n.4.

### B. Factual Background

Plaintiffs Mokkapati and Gullapalli filed their I-526 petitions with USCIS, on July 18, 2019 and November 7, 2019, respectively, seeking classification as EB-5 immigrants through the Regional Center Program.  Compl. ¶¶ 23-24.  To qualify for EB-5 classification, plaintiffs each invested $500,000 in a USCIS-designated regional center, the Affiliate Network Northeast Regional Center, LLC ("the Regional Center"), which was formed to provide a loan to a job-creating company, NJ EB5 Real Estate Fund, LP (the "Project").  *Id*. ¶ 21.  The Project has

created "thousands of new, full-time positions for qualifying U.S. workers . . . due to the EB-5 capital investment from the [Regional Center], including Plaintiffs' respective, individual EB-5 capital investment." *Id.* ¶ 22. On April 8, 2021, in response to an inquiry about the status of his petition, the USCIS Immigrant Investor Program Office ("IPO") confirmed to plaintiff Mokkapati that although a visa was available for him, his EB-5 petition was pending adjudication. *Id.* ¶¶ 27-28. Plaintiff Gullapalli subsequently received similar confirmation from the IPO, on April 27, 2021, that while a visa was available, his EB-5 petition remained pending. *Id.* ¶ 26. To date, defendants have not adjudicated plaintiffs' petitions nor provided plaintiffs with "any meaningful feedback regarding [their] status." *Id.* ¶¶ 33-34.

C. **Procedural Background**

Less than two years after filing their petitions with USCIS, plaintiffs commenced this action, on May 3, 2021, seeking a writ of mandamus and order "compelling USCIS to adjudicate [plaintiffs'] I-526 Petitions forthwith" pursuant to the APA and Mandamus Act. *Id.* ¶ 1. Defendants were granted an extension to answer or otherwise respond to plaintiffs' complaint until August 9, 2021, *see* Min. Order (July 6, 2021), but before filing any responsive pleading, the parties sought to stay proceedings "pending reauthorization of the Regional Center Program," Defs.' Unopposed Mot. Stay at 1, ECF No. 11.[2] This matter was then stayed until December 3, 2021, when the stay automatically lifted. *See* Min. Order (Aug. 5, 2021); *see also* Min. Order (Dec. 6, 2021) (directing defendants to file any motion to dismiss by December 20, 2021).

Defendants filed the pending motion to dismiss on December 20, 2021, *see generally* Defs.' Mem., seeking dismissal, under both Federal Rules of Civil Procedure 12(b)(1) and (6),

---

[2] In other similar cases pending during lapse of statutory authorization for the Regional Center Program, the government sought dismissal rather than, as here, a stay of the litigation. *See, e.g., Bromfman*, WL 5014436, at *5 (dismissing as moot action to adjudicate I-526 petition pending during expiration of Regional Center Program after agency did not seek to stay proceedings until program reauthorization).

5

arguing, in part, that the June 30, 2021, statutory sunset for the Regional Center Program rendered plaintiffs' claims moot because, until Congress reauthorized the program, "USCIS lack[ed] the authority to provide Plaintiffs the immigration benefits they seek," *id*. at 12.  After the March 15, 2022, enactment of the EB-5 Reform and Integrity Act of 2022, which reauthorized issuance of EB-5 visas under the Regional Center Program, defendants withdrew the portion of their motion to dismiss plaintiffs' complaint as moot pursuant to Rule 12(b)(1). Defs.' Notice at 1.[3]  Defendants' remaining motion to dismiss for failure to state a claim under Rule 12(b)(6) is now ripe for resolution.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757-58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Limited*, 22 F.4th 204, 210 (D.C. Cir. 2022).  Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts

---

[3] With leave of Court, *see* Min. Order (Jan. 6, 2022), Invest in the USA and American Immigrant Investor Alliance—two not-for-profit organizations dedicated to promoting the Regional Center Program and advocating on behalf of EB-5 investors—submitted an amicus brief in support of plaintiffs arguing only that Congress was likely to reauthorize the Regional Center Program and thus urging the Court not to dismiss plaintiffs' complaint as moot. *See generally* Amici Curiae Br. Supp. Pls.' Opp'n, ECF No. 16; *id.* at 5 ("The amicus brief expresses no opinion on whether Plaintiffs are statutorily entitled to relief pursuant to 5 U.S.C. §555(b) and 706(1) of the Administrative Procedures [sic] Act . . or 28 U.S.C. §1361 of the Mandamus and Venue Act of 1962.").

set out in the complaint.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)). "In determining whether a complaint fails to state a claim," a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [courts] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006).

### III.  DISCUSSION

Defendants contend that plaintiffs "have . . . failed to state a claim because any delay here is not unreasonable as a matter of law" to warrant relief under either the APA or Mandamus Act. Defs.' Mem. at 8. The APA requires agencies to "conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). In determining whether a delay in agency action is unreasonable, the D.C. Circuit has identified six factors for consideration:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted). This standard applies to claims of unreasonable delay under both the Mandamus Act and the APA. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55,

63-64 (2004); *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  Examining the available record using the *TRAC* factors demonstrates that plaintiffs have failed to state a claim for unreasonable delay. [4]

        1.     *TRAC Factors 1 & 2*

The first and second *TRAC* factors, on balance, weigh firmly in favor of defendants.  The first factor—that the timeline for agency decisionmaking be governed by a "rule of reason"—is the most important, *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), and is "typically considered together" with the second factor regarding congressional timetables, *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

---

[4] Plaintiffs assert that consideration of the *TRAC* factors in assessing "whether agency action is unreasonably delayed" is "premature" at the "pleadings stage," Pls.' Opp'n at 15, even though the *TRAC* decision does not command assessment of the six factors only after completion of discovery.  Plaintiffs rely on a later D.C. Circuit decision stating, without more, that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Id.* at 15 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).  Contrary to plaintiffs' position, the majority view in this District is that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay.  *See, e.g., Chowdhury v. Blinken*, No. 21-cv-1205 (RCL), 2022 WL 136795, at *3 (D.D.C. Jan. 14, 2022) (applying TRAC factors and dismissing action for failure "to plausibly allege the delayed adjudication of . . . application was unreasonable"); *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at * 5 (D.D.C. Mar. 22, 2021) (finding that record at pleadings stage "contain[ed] enough facts to evaluate the *TRAC* factors now" and dismissing action for failure to state claim of unreasonable delay (citations omitted)); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49-50 (D.D.C. 2021) (McFadden, J.) (surveying cases and concluding that "the weight of the authority appears to cut" in favor of applying the *TRAC* factors at the motion-to-dismiss stage); *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (noting that *TRAC* factors have been generally employed at motion-to-dismiss stage "to determine whether a plaintiff's complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay" (cleaned up)); *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020) (acknowledging the split in authority but deciding "it is appropriate for the Court to apply the factors at th[e] [motion-to-dismiss] stage"); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175-77 (D.D.C. 2020) (Cooper, J.) (applying *TRAC* factors to resolve the government's motion to dismiss); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 93-96 (D.D.C. 2020) (Bates, J.) (same); *but see, e.g., Addala v. Renaud*, No. 20-cv-2460 (RCL), 2021 WL 244951, at *3 (D.D.C. Jan. 25, 2021) (noting court's "discretion to wait to take up the merits of an unreasonable delay claim until after discovery" and accordingly declining to "consider whether the agency has unreasonably delayed adjudication of the plaintiffs' visa applications until it has a sufficient record to answer that question"); *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020) (Huvelle, J.) ("conclud[ing] that any determination of whether defendants have unreasonably delayed adjudication" of Iranian citizen's visa waiver application "is premature at this juncture" because the inquiry is "fact intensive" (cleaned up)).  The record here provides sufficient discernible and undisputed facts to evaluate the *TRAC* factors and determine, not whether there has been an unreasonable delay as a factual matter, but rather whether plaintiffs' complaint alleges facts sufficient to state a plausible claim for unreasonable administrative delay.  *See Sarlak*, 2020 WL 3082018, at *5 (citing *Ghadami*, 2020 WL 1308376, at *7 n.6).

Plaintiffs assert that defendants "fail to provide a Rule of Reason in their ever-fluctuating visa processing times" and that "[n]othing . . . suggests" defendants' "inaction" for over two years with regards to adjudication of their I-526 petitions "is reasonable." Pls.' Opp'n at 18. This argument misses the mark. Whether a "rule of reason" exists for agency action "cannot be decided in the abstract, by reference to some number of months or years beyond which agency action is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significant (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Here, consistent with the "wide discretion" afforded to USCIS by Congress in the "area of immigration processing," *Skalka v. Kelly*, 246 F. Supp. 3d 153-54 (D.D.C. 2017), this agency's petition adjudication process is governed by a recognized rule of reason: "the visa availability approach." Defs.' Mem. at 15 (citations omitted). Under this approach, USCIS prioritizes applications on a "first-in, first-out basis" from countries with currently or soon-to-be available visas. *Id.* As defendants correctly point out, both this Court and numerous other Judges in this District have recently held that this method is reasonable and well within the agency's workload-management discretion. *Id.*; *Nohria v. Renaud*, No. 20-cv-2085 (BAH), 2021 WL 950511, at *6 n.5 (D.D.C. Mar. 14, 2021) ("The agency's process is clearly governed by a solid rule of reason—the visa availability approach—meeting the first factor"); *see also Sychev v. Jaddou*, No. 20-cv-3484 (CKK), 2022 WL 951378, at *4 (D.D.C. Mar. 30, 2022) ("[C]ourts of this jurisdiction have regularly found that the Government applies a 'rule of reason' to review of I-526 petitions by EB-5 applicants"); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) (McFadden, J.) (holding that for I-526 petitions "a 'first-in, first-out method'

9

satisfies the rule-of-reason inquiry"). Defendants have thus established that their adjudication of I-526 petitions is guided by the requisite rule of reason.

Attempting to tilt the second *TRAC* factor in their favor—whether Congress has indicated a timetable for the agency action at issue—plaintiffs look to 8 U.S.C. § 1571(b), "the preamble to legislation providing for the institution of measures to reduce the backlog in processing of immigration benefits by the now-defunct Immigration and Naturalization Service." *Arab v. Blinken*, No. 21-cv-1852 (BAH), 2022 WL 1184551, at *7 (D.D.C. Apr. 21, 2022). Section 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b); *see also* Pls.' Opp'n at 19. In plaintiffs' view, § 1571(b) "sets a normative expectation" that the "reasonable processing time for an immigrant benefit application" will not exceed "180 days after initial application." Pls.' Opp'n at 20.

Plaintiffs concede, however, that the timeline outlined in § 1571(b) "is not mandatory," *id.* at 19, and that Congress has otherwise "not established a mandatory time frame for the USCIS to complete the adjudication," *id.* at 20 (citations omitted); *see also Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008) (noting that "a sense of Congress resolution is not law"). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020); *see Skalka*, 246 F. Supp. 3d at 154 (collecting cases). Although no bright lines have been drawn in this context, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (quoting *Yavari v. Pompeo*, No. 19-cv-02524 (SVW-JC), 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019));

10

*see also Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that "similar and even greater delays" than a forty-two-month delay are "insufficient to warrant emergency relief in this district"). Plaintiffs' wait of around thirty-two months for adjudication of their I-526 petitions is therefore not unreasonable as a matter of law, especially when USCIS was unable to act on plaintiffs' petitions for nine of those months given the lapse of statutory authorization for the Regional Center Program between June 2021 and March 2022. *See Bromfman*, WL 5014436, at *4 n.4; *see also* Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply"), at 5, ECF No. 17 (noting plaintiffs' failure to identify any authority establishing that USCIS retained adjudicatory power during expiration of EB-5 program). Given the foregoing, the first and second *TRAC* factors tip decisively in defendants' favor.

        2.    *TRAC Factors 3 & 5*

The third and fifth factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Although their complaint is sparse on details, plaintiffs—both of whom already legally reside in the United States—allege that defendants' failure to adjudicate their I-526 petitions "has materially hindered their lives and livelihood" because they are "unable to travel internationally to visit family abroad," Compl. ¶ 54, and cannot "continue planning the future[] for themselves and their respective families," *id.* ¶ 55; *see also* Pls.' Opp'n at 21-22. The "prolonged and indefinite separation" of families may indeed place health and welfare at stake. *See Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) (finding the third and fifth *TRAC* factors to weigh in plaintiffs' favor given their separation from friends and family); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (finding third and fifth *TRAC* factors in plaintiff's favor due to prolonged

separation of spouses). Defendants do not suggest otherwise. *See* Defs.' Mem. at 17; Defs.' Reply at 13. Instead, defendants emphasize that, because "an approved I-526 petition is merely a preliminary step in the process towards becoming a lawful permanent resident," it is "speculative" that adjudication of their I-526 petitions will entitle plaintiffs to the immigration benefit they seek. Defs.' Mem. at 17. While this point is well-taken, plaintiffs' interest in reuniting with their loved ones abroad is "undeniably significant," *Didban*, 435 F. Supp. 3d at 177, tipping the third and fifth *TRAC* factors in plaintiffs' favor.

### 3. *TRAC* Factor 4

The fourth *TRAC* factor addresses whether expediting a petition "would harm other agency activities of equal or greater priority." *Sarlak,* 2020 WL 3082018, at *6. This factor is given great weight, *Mashpee*, 336 F.3d at 1100, and conclusively favors defendants' position here.

Plaintiffs argue that they "should not be punished for USCIS' lack of preparedness" and claim "[i]t is not apparent that USCIS was working at a reasonable pace to process the applications," even before the lapse in the Regional Center Program's authorization. Pls.' Opp'n at 22. Defendants counter that "what [plaintiffs] seek is an order from the Court allowing them to jump the line in front of other petitioners who have been waiting as long or longer than them." Defs.' Reply at 12. As discussed above, defendants face a backlog of unadjudicated I-526 petitions due to the Regional Center Program's lapsed and now reinstated authorization. *See Bromfman*, WL 5014436, at *4 n.4 (explaining that USCIS held in abeyance and could not adjudicate I-526 pending petitions during the Regional Center Program's expiration beginning in June 2021). Particularly in these circumstances—as USCIS reimplements the Regional Center Program and resumes processing of I-526 applications—the deference normally afforded to the

agency's priority-setting and resource-allocation decisions is more crucial.  *See Milligan*, 502 F. Supp. 3d at 319 ("Delays stemming from resource-allocation decisions simply do not lend themselves to judicial reorderings of agency priorities.") (cleaned up); *In re Barr Labs*, 930 F.2d 72, 76 (D.C. Cir. 1991) (recognizing that an "agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way").

Although plaintiffs are no doubt dissatisfied with USCIS's pace of adjudication, judicial relief cannot serve as a vehicle for plaintiffs to "jump the line, functionally solving their delay problem at the expense of other similarly situated applicants" as the agency works through its backlog of unadjudicated petitions now that the Regional Center Program has been reauthorized. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016); *see also Tate*, 513 F. Supp. 3d at 149 ("Relief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved." (quoting *In re Barr Labs., Inc.*, 930 F.2d at 75)).  As a result, the fourth factor weighs in defendants' favor.

        **4.**     *TRAC Factor 6*

Lastly, the sixth and final factor is neutral.  "[T]he court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (citations omitted).  Here, plaintiffs raise no "allegation of impropriety." Pls.' Opp'n at 23; *see also* Defs.' Reply at 13 ("Plaintiffs concede that they do not make any allegations of impropriety.").  Assessment of this factor therefore "does not alter the Court's analysis." *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *8 (D.D.C. Mar. 22, 2021).

\*\*

Considering the six *TRAC* factors in their totality, plaintiffs have not stated a claim under the Mandamus Act or the APA for unreasonable delay. *See, e.g., Zaman*, 2021 WL 5356284, at \*6-8 (reaching the same conclusion); *Milligan*, 502 F. Supp. 3d at 320 (same). The Court sympathizes with plaintiffs' concerns that delays in adjudication have contributed to plaintiffs' separation from their families and uncertainty as to their future. Almost a third of that delay, however, stemmed not from defendants' actions (or inaction) but from Congress's delay in extending authorization for the Regional Center Program so that this program lapsed on June 30, 2021, until reauthorized on March 15, 2022. Moreover, many other individuals are in similarly trying circumstances, and defendants, too, face their own challenges in determining how best to deploy scarce resources during an unprecedented global pandemic and while they work to reimplement the Regional Center Program under the recently enacted EB-5 Reform and Integrity Act of 2022.

Taking the factors as a whole, the agency equities at stake—from the visa availability approach providing a "rule of reason" for the adjudicatory process to the government's "interest in balancing its own priorities" and determining how to manage its workload amidst the Regional Center Program's reauthorization after a nine-month lapse—thus outweigh plaintiffs' less compelling, albeit real, hardship resulting from USCIS's delay. *Milligan*, 502 F. Supp. 3d at 320 (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95-96 (D.D.C. 2020)).

## IV.    CONCLUSION

For the reasons given, defendants' motion to dismiss is granted. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: July 19, 2022

_____<br>
BERYL A. HOWELL<br>
Chief Judge